Filed 6/2/23  P. v. Brownlee CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>TERRENCE BROWNLEE,<br><br>    Defendant and Appellant. | F084911<br><br>(Fresno Super. Ct. No. CF80257140)<br><br>**OPINION** |

-ooOoo-

### THE COURT[*]

APPEAL from an order of the Superior Court of Fresno County.  Alvin M. Harrell III, Judge.

Jeffrey S. Kross, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Michael A. Canzoneri, Erin R. Doering, and Barton Bowers, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Poochigian, Acting P. J., Franson, J. and Meehan, J.

# INTRODUCTION

In 1980, appellant and defendant Terrence Brownlee[1] (appellant) pleaded guilty to count 1, second degree murder (Pen. Code, § 187, subd. (a)),[2] and count 2, robbery (§ 211), and admitted enhancements that he personally used a firearm, a handgun, in the commission of both offenses (§ 12022.7).  He was sentenced to 15 years to life for murder plus a consecutive term of two years for the attached firearm enhancement.

In 2019, after statutory amendments enacted by Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) became effective, appellant filed a petition with the trial court for resentencing pursuant to former section 1170.95.  The court denied the motion. On appeal, appellant's counsel filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).  In 2020, this court affirmed the denial of his petition.  (*People v. Terrence Brownlee* (Jan. 23, 2020, F079638) [nonpub. opn.].)

In 2022, appellant filed a second petition for resentencing in the trial court, and argued he stated a prima facie case for relief because of changes in the law and amendments to former section 1170.95 that became effective on January 1, 2022.  The court denied the motion and again held he was ineligible as a matter of law, based on this court's opinion that affirmed the denial of his first petition.

In this appeal, appellant argues his second petition for resentencing was not barred by the prior adverse rulings on his first petition by the trial court and this court, and his second petition stated a prima facie case for resentencing based on the changes in the law after his first petition was denied.

We find appellant was permitted to file a second petition for resentencing as a result of statutory amendments to former section 1170.95, now renumbered as section 1172.6, and changes in case law interpreting the statute.  Based on those changes,

---

[1] There are various spellings of appellant's first name throughout the record. Documents filed by appellant, in pro. per., show his name is spelled "Terrence."  We will do the same.

[2] All further statutory citations are to the Penal Code unless otherwise indicated.

2.

the trial court erroneously relied on hearsay statements in the probation report when it denied his first and second petitions.

This court ordered supplemental briefing from the parties as to whether we could review our own records filed by appellant his prior cases, which included certified transcripts from parole board hearings where he admitted being the actual killer. Both parties have agreed this court may do so. As a result, we find the trial court's error was not prejudicial and affirm the denial of his second petition, based on appellant's sworn admissions at parole board hearings that he was the actual killer.[3]

## **FACTUAL SUMMARY[4]**

"During the late evening hours of April 7, 1980, [appellant Brownlee and codefendants] Timothy Taylor, Richard Byrd, and Darrell Green were driving around Fresno in Timothy Taylor's 1963 Chevrolet. When these individuals were driving around[,] a discussion was held regarding the commission of a robbery to obtain some money. Darrell Green was armed with a .22 caliber sawed-off rifle and Byrd was in possession of a .357 magnum handgun.

---

[3] Appellant filed his petition in 2022 under former section 1170.95, which had been substantively amended effective January 1, 2022. It was then renumbered as section 1172.6 without further substantive changes, effective June 30, 2022. (*People v. Saibu* (2022) 81 Cal.App.5th 709, 715, fn. 3; Stats. 2022, ch. 58 (Assem. Bill. 200), § 10, eff. June 30, 2022.)

[4] The factual summary is from this court's nonpublished opinion that affirmed the denial of appellant's first petition in *People v. Brownlee*, *supra*, F079638. Since there was never a trial in this case, this court's opinion stated it was quoting the factual summary contained in the probation report that was filed in 1980, in anticipation of appellant's sentencing hearing after his plea. The probation report stated that its factual summary was "taken from the transcript of the preliminary examination held on June 11, 12, and 13, 1980 in Department One of the Fresno County Municipal Court under Municipal Court Case No. F45490."

We are citing this factual summary for the limited purpose of providing context to the prior rulings on appellant's petitions and the parties' arguments. As will be explained below, we are not relying on hearsay statements to resolve the prima facie issue as to whether appellant was ineligible for relief under section 1172.6 prior to issuing an order to show cause (OSC).

3.

"At one point, Taylor began having car trouble and the vehicle was stopped near a restaurant on North Parkway Drive. After all four individuals had exited the vehicle, Timothy Taylor suggested that they rob Motel Fresno. They proceeded to that location, but observed too many people near the office area.

"They then walked next door to the Fremor Motel. While walking through the motel, Taylor looked into the window of Room 46 and observed three individuals. These were later identified as Linus Fields, Garold Parker, and Shirley Brown. Taylor then relayed this information to Green, [appellant Brownlee], and Byrd. Taylor also obtained a .357 magnum, which was in Byrd's possession.

"Either Taylor or [appellant Brownlee] knocked on the door and when Shirley Brown answered the door, they forced their way in. Entering the room, Taylor and Byrd tied up Fields and Parker. During the preliminary examination, Linus Fields testified that one of the individuals held a gun to Parker's head and a second individual struck him over the head with what he believed to be a bottle.

"[Appellant Brownlee], who had obtained the .357 magnum handgun from Taylor, then approached Shirley Brown. [Appellant Brownlee] demanded money from her, but she replied she had none. [Appellant Brownlee] ordered Brown to 'suck his dick' and when she refused, [appellant Brownlee] struck her numerous times in the face with his fist. Brown was then gagged with a T-shirt.

"While [appellant Brownlee] was assaulting Shirley Brown, Green and Byrd were searching for money. Between eight and ten dollars was removed from the dresser in the motel room.

"As all four individuals prepared to leave the room, [appellant Brownlee] approached Shirley Brown, who was tied and gagged, and seated in a chair, put the handgun up to her face, and fired one shot. The four individuals then fled the motel.

4.

"An officer responding to the scene observed an individual believed to be Darrell Green running through Roeding Park.  Green dropped the .22 caliber sawed-off rifle which was later recovered by officers.

"Upon arrival at the scene of the shooting, officers found a receipt for the purchase of a camera.  Printed on the receipt was the name Tim Taylor and an address .…

"Officers proceeded to that location and arrested Tim Taylor and Richard Byrd.  Later that same day, officers arrested Darrell Green and [appellant Brownlee].  All four individuals were booked into the Fresno County Jail and charged with Murder and Robbery.

"A subsequent autopsy revealed that Shirley Brown had died of shock and hemorrhaging due to a gunshot wound to the head.  Dr. Thomas Nelson further testified that Brown had numerous facial injuries and bruises on her upper arms, neck, head and legs.  Dr. Nelson testified the injuries to her face were probably from a fist, however, the injuries on the scalp were caused by a hard object.

"Additionally, it was noted that the victim's blood/alcohol level was .26 percent.

"Further, blood tests taken from [appellant] Terrence Brownlee, Richard Byrd, and Timothy Taylor were negative as to the presence of drugs."

## PROCEDURAL BACKGROUND[5]

**The Charges**

On or about April 30, 1980, a first amended criminal complaint was filed in the Municipal Court of Fresno County jointly charging appellant Brownlee and codefendants

---

[5] During the pendency of this appeal, this court advised the parties that it was considering taking judicial notice of the records in appellant's prior appeals and petitions and invited supplemental briefing on that matter.  Both parties agreed that this court may take judicial notice of our own records.

On good cause appearing, we take judicial notice of this court's own records and nonpublished opinions in *People v. Brownlee* (May 1, 2008, F053324) [nonpub. opn.], *People v. Brownlee* (Nov. 18, 2015, F069282) [nonpub. opn.], *In re Terrence Brownlee* (June 16, 2020, F077663) [nonpub. opn.]; *People v. Brownlee* (Jan. 23, 2020, F079638)

Byrd, Taylor, and Green with count 1, first degree premeditated murder of Brown (§ 187). As to count 1, two special circumstances were further alleged as to appellant and the codefendants, that the murder was willful, deliberate, and premeditated, and (1) personally committed during the commission or attempted commission of a robbery (§ 211); and (2) personally committed during the commission or attempted commission of a rape (§ 261, subds. (2) & (3)).

Appellant and the codefendants were also charged with count 2, rape by force or violence committed while acting in concert (§ 261, subds. (2) & (3)); and count 3, robbery (§ 211).

On or about June 13, 1980, after the conclusion of a joint preliminary hearing, the court held appellant and the codefendants to answer on the three counts, special circumstances, and firearm allegations.

On July 3, 1980, an information was filed in the Superior Court of Fresno County charging appellant Brownlee and codefendants Taylor, Byrd, and Green with count 1, murder, with enhancements that each defendant personally used a firearm, a handgun, in the commission of the offense (§ 12022.5); and count 2, robbery (§ 211), with enhancements that appellant Brownlee and defendants Byrd and Taylor personally used a firearm, a handgun; and defendant Green personally used a firearm, a rifle, in the commission of the offense.[6]

**Codefendants' Robbery Pleas**

According to appellant's probation report, on July 2, 1980, codefendants Taylor, Byrd, and Green pleaded guilty to robbery (§ 211) and admitted using a firearm during the commission of the offense (§ 12022.5).

_____

[nonpub. opn.]; *People v. Brownlee* (Aug. 9, 2021, F080760) [nonpub. opn.]; and *In re Terrence Brownlee* (F083164, Nov. 14, 2021), petition for writ of habeas corpus filed on August 10, 2021. (Evid. Code, §§ 452, subd. (d)(1), 459, subd. (a).)

[6] The special circumstances attached to the murder count and the separate rape charge were not alleged in the information as to any of the defendants.

**Appellant Brownlee's Plea**

On July 7, 1980, appellant Brownlee appeared before Judge Caeton for his scheduled arraignment and to enter a plea. The reporter's transcript no longer exists for the plea hearing. The minute order states that appellant was advised of and waived his constitutional rights. The court found appellant gave a knowing and intelligent waiver of his rights, and there was a factual basis for his pleas and admissions.

Appellant pleaded guilty to count 1, second degree murder, and count 2, robbery, and admitted the enhancements that he personally used a firearm during the commission of both offenses. The court referred the matter to the probation department.

**The Probation Report**

On July 24, 1980, the probation report was filed with the superior court in anticipation of appellant's sentencing hearing. The report contained a factual statement about the murder and robbery that was summarized from the transcript of the preliminary hearing and relied on that summary to list aggravating and mitigating circumstances.

**Appellant's Sentencing Hearing**

On August 4, 1980, Judge Caeton conducted the sentencing hearing. Appellant was present with his attorney, Robert Kirstie.[7]

The court stated it had read and considered the probation report and asked if there were any corrections. Defense counsel stated there were not.

The court stated that according to the probation report, appellant claimed there were mitigating circumstances because he was allegedly under the influence of alcohol and drugs at the time of the crimes. The court found aggravating circumstances that the offense involved a high degree of cruelty, viciousness, and callousness; and the robbery had been completed and the murder "was a separate venture on the part of the [appellant]

---

[7] The reporter's transcript for the sentencing hearing is part of the instant appellate record.

7.

to shoot this victim, who the Court finds was particularly vulnerable and that she was outnumbered and weapons were used."

The court also stated the victim was tied up and gagged at the time of the murder. Defense counsel said the victim was gagged but not tied up. The court found the offense involved some prior planning, appellant was on parole from the California Youth Authority at the time, and he had prior juvenile petitions for robbery by force or fear, grand theft auto, petty theft, and burglary.

The court stated appellant was ineligible for probation, and the aggravating circumstances outweighed the mitigating circumstances. As to count 1, second degree murder, appellant was sentenced to 15 years to life, with a consecutive term of two years for the attached personal use enhancement. As to count 2, robbery, the court imposed the upper term of five years, plus two years for the personal use enhancement, and stayed the entirety of the sentence.[8]

---

[8] On or about August 26, 1980, the abstract of judgment and minute order were filed that stated on July 7, 1980, appellant pleaded guilty; and that on August 4, 1980, he was sentenced to the term prescribed by law for murder, which was 15 years to life. Neither document referred to the attached personal use enhancement.

On March 15, 2013, an amended minute order was filed that correctly stated appellant was sentenced to 15 years to life plus two years on count 1, and the sentence imposed for count 2 was stayed. An amended abstract of judgment was also filed, but it erroneously stated that as to count 1, appellant was sentenced to both 15 years to life *and* life without the possibility of parole. (*People v. Brownlee*, *supra*, F069282.)

In *People v. Brownlee*, *supra*, F069282, this court ordered the trial court to correct the clerical error in the amended abstract of judgment about appellant's sentence for murder.

On February 4, 2016, a corrected abstract of judgment was filed consistent with the reporter's transcript from the August 4, 1980, sentencing hearing, that appellant was sentenced to 15 years to life for murder, with a consecutive term of two years for the personal use enhancement, and the sentence imposed for count 2 and the attached firearm enhancement were stayed.

8.

## APPELLANT'S PRIOR WRITS AND APPEALS

**Challenges to Validity of His Plea**

On October 17, 1980, appellant filed a notice of appeal from his plea and sentence; it was rejected as untimely.

On December 15, 1983, the trial court denied appellant's petition for writ of habeas corpus that alleged his plea was coerced. "The court has reviewed the file herein, *including the reporter's notes of the change of plea hearing.* There is no evidence contained therein to support any of defendant's allegations." (Italics added.)

On December 23, 2003, the trial court denied appellant's second habeas petition that again challenged his plea. (*People v. Brownlee*, *supra*, F053324.) This court and the California Supreme Court denied appellant's subsequent habeas petitions that raised similar issues. (*Ibid.*)

**Additional Challenges Based on the Record of His Plea**

On May 30, 2007, the trial court denied appellant's petition for a writ of error *coram nobis*, where he alleged the records of his 1980 plea and sentencing hearings were destroyed in bad faith, his plea was not taken in open court, his plea bargain was allegedly for a *determinate* term of 15 years, and he should be released.[9] (*People v. Brownlee*, *supra*, F053324.)

On May 1, 2008, this court affirmed the denial of appellant's petition for writ of error *coram nobis* that claimed he was only sentenced to a determinate term of 15 years. The exhibits filed in support of the petition included a letter dated June 9, 2000, from Robert Kirstie, who represented appellant at the 1980 plea hearing. Mr. Kirstie responded to an inquiry from appellant and wrote: "I did not tell you the sentence was 15 years. Neither did the judge. I did not tell you that you would be released in 12 years.

---

[9] The reporter's transcript for his sentencing hearing has not been destroyed and is part of the instant record.

9.

[¶] I very carefully explained the case and the law to you. At the time you entered your plea you understood what you were doing." (*People v. Brownlee*, *supra*, F053324.)

**Denial of Petition for Youth Offender Parole Hearing**

In *In re Brownlee* (2020) 50 Cal.App.5th 720, this court denied appellant's petition for a youth offender parole hearing, finding that while he was 19 years old at the time he committed the offenses in 1980, he was not entitled to relief because he already had parole hearings in 1990 and 2000, another parole hearing was scheduled for 2020, and the Board of Parole Hearings was statutorily required to apply certain criteria regarding the diminished culpability of juveniles at his next hearing. (*Id.* at pp. 722–723, 726.)

## APPELLANT'S FIRST PETITION FOR RESENTENCING

On January 7, 2019, appellant filed, in pro. per., a petition in the trial court for resentencing of his murder conviction pursuant to former section 1170.95 and requested appointment of counsel.

Appellant filed a supporting declaration that consisted of a preprinted form where he checked boxes that stated he was eligible for resentencing because (1) a complaint, information, or indictment was filed against him that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; and (2) at trial, he was convicted of first or second degree murder under the felony murder rule or the natural and probable consequences doctrine, or (3) he pleaded guilty or no contest to first or second degree murder in lieu of going to trial because I believed I could have been convicted of first or second degree murder at trial pursuant to the felony murder rule or the natural and probable consequences doctrine; and (4) he could not presently be convicted of first or second degree murder because of changes made to section 188 and 189, effective January 1, 2019.

**The People's Opposition**

The People filed opposition and argued appellant failed to make a prima facie case for resentencing, citing both the hearsay summary of facts in the probation report and the trial court's statements at the sentencing hearing, that appellant was the actual killer who fatally shot the victim.

**The Court's Summary Denial of the First Petition**

On June 20, 2019, Judge Alvin M. Harrell III filed an order that summarily denied appellant's petition, without appointing counsel or conducting a hearing. The court held appellant failed to a make a prima facie showing and was ineligible for resentencing because he "was not an accomplice convicted under the natural and probable consequences doctrine and he was not convicted of second degree felony murder. [He] was the actual killer."

**This Court's Opinion**

Appellant filed a notice of appeal from the denial of his petition (*People v. Brownlee*, *supra*, F079638), and his appointed counsel filed a brief pursuant to *Wende* (1979) 25 Cal.3d 436.

On January 23, 2020, this court filed the nonpublished opinion in *People v. Brownlee*, *supra*, F079638, conducted a *Wende* review, and affirmed the denial of appellant's petition for resentencing. In doing so, this court relied on the hearsay summary of facts in the 1980 probation report and concluded appellant "was the actual killer of Shirley Brown, and the changes to sections 188 and 189 would not now operate to spare him a murder conviction [citation]. Thus, [appellant] could not make a prima facie showing he was entitled to relief under section 1170.95."[10]

_____

[10] After the denial of his first petition for resentencing, appellant filed another motion to vacate that was denied by the trial court. On August 9, 2021, this court held this motion to vacate was properly denied and noted the trial court found that after appellant pleaded guilty in 1980, " 'in the ensuing decades, [he] has repeatedly sought to challenge his conviction and sentence in this Court, the Court of Appeal and in the California Supreme Court. [Appellant's] principle [*sic*] argument in the attempts he has

11.

## APPELLANT'S SECOND PETITION FOR RESENTENCING

Effective January 1, 2022, Senate Bill No. 775 (2020–2021 Reg. Sess.) (Senate Bill 775) made substantive amendments to former section 1170.95 consistent with the California Supreme Court's interpretation of the statute in *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*), and it was subsequent renumbered as section 1172.6. (Stats. 2021, ch. 551, § 1 (Sen. Bill 775); *People v. Saibu, supra,* 81 Cal.App.5th at p. 714; Stats. 2022, ch. 58 (Assem. Bill. 200), § 10, eff. June 30, 2022).

The instant appeal is from appellant's second petition for resentencing filed, in pro. per., in the trial court on March 7, 2022, after the statutory amendments became effective. Appellant again requested appointment of counsel.

Appellant filed a supporting declaration that consisted of a preprinted form where he checked boxes that asserted (1) he was eligible for resentencing because a complaint, information, or indictment was filed that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine; (2) he was convicted of murder, attempted murder, or manslaughter following a trial, or accepted a plea offer in lieu of a trial in which he could have been convicted of murder or attempted murder; and (3) he could not presently be convicted of murder or attempted murder because of changes made to section 188 and 189, effective January 1, 2019.

Appellant filed a separate declaration and stated his murder plea was involuntary because the court failed to ask him whether he was threatened or forced to enter the plea.

---

made in this Court is that his plea agreement was to a term of only 15 years **not** 15 years to *life.* [Appellant] is mistaken, as the sentence for second-degree murder, in 1980, as now, was mandated by statute to be a term of 15 years to life. [Citation.]' " (*People v. Brownlee*, *supra*, F080760, bold print and underline in original.)

12.

In further support of the petition, appellant attached the information and the reporter's transcript from his sentencing hearing in 1980.

On April 19, 2022, the trial court appointed counsel to represent appellant.

On May 2, 2022, appellant, again acting in pro. per., filed a motion with the trial court for discovery of the records of his 1980 plea. The motion was denied. The public defender declared a conflict and the court appointed another attorney to represent appellant.[11]

**The District Attorney's Opposition**

On July 7, 2022, the district attorney filed opposition to appellant's second petition for resentencing and relied on this court's opinion in *People v. Brownlee*, *supra*, F079638, that affirmed the denial of his first petition.

The district attorney acknowledged that after appellant's first petition was denied, there were changes in statutory and case law that limited reliance on facts stated in an appellate opinion to determine whether a petition stated a prima facie case. However, the district attorney argued appellant's second petition still lacked merit because this court's appellate decision affirmed the denial of his first petition and constituted law of the case that he was the actual killer, and he could not file successive petitions raising the same issue.

**Appellant's Hearing Brief**

On August 11, 2022, appellant's counsel filed a hearing brief with the trial court and argued that subsequent authorities and the amendments to section 1172.6 prohibit the courts from relying on the probation report's hearsay summary of the preliminary hearing evidence to find he did not state a prima facie case for relief.

---

[11] On June 21, 2022, appellant, again acting in pro. per., filed a motion for the trial court to enter a "default" granting his petition for resentencing. On June 23, 2022, appellant, continuing to act in pro. per., filed a motion for "judicial notice" of the transcript of his plea hearing. These motions were denied.

Appellant's counsel argued the current petition stated a prima facie case, and the trial court was required to issue an OSC and conduct an evidentiary hearing on whether he should be resentenced.

**The Court's Hearing on Appellant's Second Petition**

On August 18, 2022, Judge Harrell, who denied appellant's first petition, held a hearing on appellant's second petition. Ms. Takao, appellant's counsel, stated appellant waived his appearance.

Mr. Avent, the deputy district attorney, argued this court's opinion that affirmed the denial of his first petition for resentencing was a final determination that appellant was the actual killer and ineligible for relief, he did not seek review of that decision, and he could not file successive petitions raising the same issue that was already decided.

Ms. Takao argued this court's opinion did not foreclose appellant from filing the second petition because counsel was never appointed when he filed his first petition, that petition was summarily denied, and appellant was entitled to again seek relief given the amendments to section 1172.6 and the changes in case law interpreting the statute.

### *Discussions About the Preliminary Hearing Transcript*

Also at the hearing, Ms. Takao stated that while a trial was never held in this case, a preliminary hearing was conducted prior to appellant's entry of his plea. Ms. Takao argued the trial court could not consider hearsay evidence in the preliminary hearing transcript to deny his petition for resentencing, and stated:

> "I have reviewed the Court file *as well as the prelim transcript*, and the evidence that [appellant] was the shooter was conveyed, or testified to, at the preliminary hearing by Detective Mitchell, *and given that that is hearsay information, at least as to [appellant], I would ask the Court not to consider that ….*" (Italics added.)

Ms. Takao asserted the direct evidence introduced at the preliminary hearing only showed appellant was involved in a felony murder, and the district attorney could not rely

on the hearsay summary of that evidence in the probation report to argue appellant was ineligible for resentencing because he was allegedly the actual killer.

The court asked Ms. Takao whether it could consider appellant's admission at the plea hearing – that he personally used a firearm in the commission of the murder – to find he was the actual killer. Counsel replied that appellant's admission to the firearm enhancement could not be relied on because that would "frustrate" the purpose of the section 1172.6 petition. The court asked Ms. Takao to clarify what evidence would be admissible. Counsel replied:

> "I believe the preliminary hearing transcript contains that at least it was a felony murder based on live testimony. So both – the situation involved the victims, one was killed and the two others were still present at the time that this occurred, they testified at the preliminary hearing. They were unable to identify any assailants or suspects at [the] preliminary hearing, *but I believe that their live testimony establishes that this was a felony murder or murder under natural and probable consequences.* [¶] *I believe, however, the evidence in the preliminary hearing transcript that establishes that [appellant] was the actual killer was hearsay as testified through a detective and not live testimony.* And based on the changes in law to [section] 1172.6 that occurred beginning this year, at a hearing, after an OSC has been issued, the Court cannot consider Prop 115 or hearsay evidence at a preliminary hearing transcript …." (Italics added.)

Mr. Avent stated he did not realize the transcript from appellant's preliminary hearing still existed, he had not seen it, and he did not know "if I can get [my] hands on it." He argued it was not necessary to rely on that transcript because this court's opinion from 2020 found appellant was the actual killer, that ruling was law of the case since appellant never filed a petition for review, and appellant could not file another section 1172.6 petition raising the same issue.

Ms. Takao did not introduce the preliminary hearing transcript into evidence and Mr. Avent did not request a copy of the transcript from her. There is no indication that the trial court reviewed the preliminary hearing transcript, and that transcript is not part of the record before this court.

**The Court's Denial of the Petition**

After the parties' arguments, the court denied appellant's petition:

"The Court previously made a ruling in this case [in the first petition]. Counsel was not involved in that so, properly, he now has counsel. Counsel has raised the objections that were noted. The Court finds that the Court's original determination, which was confirmed by the 5th District Court of Appeal, is the appropriate determination that this individual was in fact the actual killer and, therefore, not entitled to relief sought…."

**Issues on Appeal**

Appellant has filed a timely a notice of appeal from the trial court's denial of his second petition. Appellant argues he could file his second petition because of changes in the law, the trial court erroneously denied his second petition by relying on the hearsay factual summary in this court's prior opinion from the probation report, and the matter must be remanded for issuance of an OSC and an evidentiary hearing because there is no admissible evidence in the record of conviction to show he was ineligible for resentencing as a matter of law.

## DISCUSSION

### I. Senate Bill 1437 and Section 1172.6

In order to address the parties' contentions, we begin with Senate Bill 1437's amendments of sections 188 and 189, interpretations of the provisions, and subsequent statutory amendments.

"Effective January 1, 2019, Senate Bill … 1437 … amended the felony-murder rule by adding section 189, subdivision (e). [Citation.] It provides that a participant in the qualifying felony is liable for felony murder only if the person: (1) was the actual killer; (2) was not the actual killer but, with the intent to kill, acted as a direct aider and abettor; or (3) was a major participant in the underlying felony and acted with reckless indifference to human life. [Citation.] The Legislature also amended the natural and probable consequences doctrine by adding subdivision (a)(3) to section 188, which states that '[m]alice shall not be imputed to a person based solely on his or her participation in a

16.

crime.' " (*People v Harden* (2022) 81 Cal.App.5th 45, 50–51; *People v. Strong* (2022) 13 Cal.5th 698, 707–708 (*Strong*).)

"Senate Bill 1437 also created a special procedural mechanism for those convicted under the former law to seek retroactive relief under the law as amended," originally codified in former section 1170.95. (*Strong, supra*, 13 Cal.5th at p. 708, fn. omitted.) The original version of the statute permitted "a person with an existing conviction for felony murder or murder under the natural and probable consequences doctrine to petition the sentencing court to have the murder conviction vacated and to be resentenced on any remaining counts if he or she could not have been convicted of murder as a result of the other legislative changes implemented by Senate Bill … 1437." (*People v. Flores* (2020) 44 Cal.App.5th 985, 992.)

As previously explained, Senate Bill 775 (2020–2021 Reg. Sess.) made substantive amendments to former section 1170.95, effective January 1, 2022, consistent with *People v. Lewis*, *supra*, 11 Cal.5th 952, and " '[c]larifie[d] that persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural [and] probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories.' " (*People v. Birdsall* (2022) 77 Cal.App.5th 859, 865, fn. 18; *People v. Vizcarra* (2022) 84 Cal.App.5th 377, 388.) The statute has since been renumbered as section 1172.6. (*People v. Saibu, supra,* 81 Cal.App.5th at p. 714.)

Appellant's second petition was thus filed pursuant to section 1172.6, which states:

> "(a) A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, *attempted murder under the natural and probable consequences doctrine,* or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply:

17.

"(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine.

"(2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder.

"(3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a), italics added.)[12]

The court shall appoint counsel if requested by petitioner. (§ 1172.6, subd. (b)(3).) After service of the petition, the prosecutor shall file and serve a response. The petitioner may file and serve a reply after the response is served. (*Id.*, subd. (c).)

"After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause. If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." (§ 1172.6, subd. (c).)

The record and opinion from a petitioner's direct appeal are part of the record of conviction. (*Lewis, supra*, 11 Cal.5th at p. 972.) The role of the appellate opinion is limited, however, and the court may not rely on factual summaries contained in prior appellate decisions or engage in fact finding when determining if the petitioner made a prima facie showing. (*People v. Clements* (2022) 75 Cal.App.5th 276, 292; *Lewis*, at p. 972.)

---

[12] While not applicable herein, section 189 was amended to allow for felony-murder liability where the victim is a peace officer. (§ 189, subd. (f).)

18.

"In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Lewis, supra*, 11 Cal.5th at p. 972.) "[T]he prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citation.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citation.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Id*. at p. 971.)

To demonstrate prejudice from the denial of a section 1172.6 petition before the issuance of an OSC, the petitioner must show it is reasonably probable that, absent the error, his or her petition would not have been summarily denied without an evidentiary hearing. (*Lewis, supra*, 11 Cal.5th at pp. 972–974; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

If an OSC is issued, "the court shall hold a hearing to determine whether to vacate the murder, attempted murder, or manslaughter conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence…." (§ 1172.6, subd. (d)(1).)

"At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019. The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court

19.

may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule. The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens…." (§ 1172.6, subd. (d)(3).)[13]

## II. Appellant's Successive Petitions

We first consider whether appellant could file a second petition pursuant to section 1172.6, or if his second petition was barred by the trial court's denial of his first petition because this court's opinion affirming that ruling operated as collateral estoppel.

### A. *Farfan*

In *People v. Farfan* (2021) 71 Cal.App.5th 942 (*Farfan*), the court addressed a situation similar to the instant case. In 2019, the defendant filed a petition for resentencing of his murder conviction, shortly after former section 1170.95 was enacted. The superior court denied the petition and the defendant did not file an appeal. In 2020, the defendant filed a second petition raising the same issues, along with a motion for reconsideration, based upon new legal authority that undermined the basis for the superior court's denial of his first petition. The superior court denied both motions. (*Id.* at p. 946.)

*Farfan* held a petitioner may file successive petitions for resentencing pursuant to former section 1170.95 if the subsequent petitions are based on new legal authority.

---

[13] "If such evidence may not be considered at an evidentiary hearing to determine a petitioner's ultimate eligibility for resentencing, we fail to see how such evidence could establish, as a matter of law, a petitioner's ineligibility for resentencing" in determining whether he made a prima facie case for relief. (*People v. Flores* (2022) 76 Cal.App.5th 974, 988, fn. omitted.)

(*Farfan, supra,* 71 Cal.App.5th at pp. 946–947, 950–951.) *Farfan* rejected the People's argument that collateral estoppel barred defendant's second petition, because even the People conceded former section 1170.95 contained no express bar to successive petitions "where, as here, the subsequent petition rested on new legal authority which challenged the basis for the superior court's summary denial of the previous petition." (*Farfan,* at pp. 946–947, 950.)

Farfan held the California Supreme Court's ruling in *Lewis,* and other cases published after appellant's first petition was denied, demonstrated the "still-evolving state of [former] section 1170.95 jurisprudence" and appellant's second petition was not barred by collateral estoppel. (*Farfan, supra*, 71 Cal.App.5th at p. 950.)

> "In our view, application of collateral estoppel to bar consideration of appellant's 2020 petition would thwart Senate Bill … 1437's overall purpose of ensuring that 'a person's sentence is commensurate with his or her individual criminal culpability' [citations], and that 'all those entitled to resentencing are able to obtain relief' [citation].  This is especially true in this case, where the superior court never appointed counsel even though appellant filed two facially sufficient petitions." (*Ibid.*)

Farfan explained that "[a]pplication of collateral estoppel is not automatic, but is subject to public policy considerations," and factors such as " 'preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation – strongly influence whether its application in a particular circumstance would be fair to the parties and constitutes sound judicial policy.' [Citation.]  In this case, none of these public policy considerations favors application of collateral estoppel to bar appellant's 2020 petition." (*Farfan, supra*, 71 Cal.App.5th at p. 950.)

Farfan also rejected the People's claim that a petition filed under former section 1170.95 was similar to a petition for writ of habeas corpus. (*Farfan, supra*, 71 Cal.App.5th at pp. 950–951.)  While successive habeas petitions cannot not be filed on the same factual and legal grounds, "the general rule does not apply in habeas

21.

proceedings *when there has been a retroactive change in the law affecting the petitioner*. [Citation.] As our Supreme Court explains, a change is retroactive when it 'is substantive rather than procedural (i.e., it alters the range of conduct or the class of persons that the law punishes, or it modifies the elements of the offense) or when a judicial decision undertakes to vindicate the original meaning of the statute.' " (*Id*. at p. 951, italics added.)

> "Under this standard, not only are the changes to the law effected by Senate Bill … 1437 themselves retroactive, but judicial interpretations of [former] section 1170.95 may afford a petitioner grounds for claiming eligibility for relief under the statute that were not previously available under other judicial interpretations. Here, because appellant's 2020 petition was based on new authority which challenged the primary ground for the superior court's summary denial of his 2019 petition, the 2020 petition was not procedurally barred as a successive petition." (*Ibid*., italics added.)

While *Farfan* held the defendant in that case could file a second petition, it also held the defendant was still ineligible for relief as a matter of law based upon the jury's findings. (*Farfan, supra*, 71 Cal.App.5th at p. 947.)

**B.    *Analysis***

In this case, appellant filed his first petition for resentencing under former section 1170.95, it was denied in 2019, and this court affirmed the trial court's denial in 2020. Both this court and the superior court relied on the hearsay statement of facts contained in the probation report, that was summarized from the preliminary hearing evidence, and held appellant did not state a prima facie case for relief because, given appellant's plea, that factual summary showed he was the actual killer.

At the time of these rulings, there was a division among appellate courts as to whether hearsay evidence could be relied upon to find a petition did not state a prima facie case for relief. (See, e.g., *People v. Williams* (2020) 57 Cal.App.5th 652, 661–662 [reliable hearsay evidence admissible to address prima facie question under former section 1170.95].)

As a result of the California Supreme Court's decision in *Lewis* in 2021, and the amendments to section 1172.6 that became effective in 2022, it is now clear that the court cannot make factual findings, rely on factual statements in a prior appellate opinion, or rely on hearsay in a probation report, to conclude that a petition does not state a prima facie case. (§ 1172.6, subd. (d)(3); *Lewis, supra*, 11 Cal.5th at pp. 971–972; *People v. Owens* (2022) 78 Cal.App.5th 1015, 1026; *People v. Clements*, *supra*, 75 Cal.App.5th at p. 292; *People v. Cooper* (2022) 77 Cal.App.5th 393, 400, fn. 9.)

Based on these changes in the statutory and decisional law, appellant's second petition was not barred by principles of collateral estoppel and this court's decision in *People v. Brownlee*, *supra*, F080760 that affirmed the denial of his first petition. (*Farfan, supra*, 71 Cal.App.5th at pp. 950–951.)

## III. The Superior Court's Denial of Appellant's Second Petition

When appellant filed his second petition in 2022, the superior court complied with section 1172.6 and appointed counsel, received further briefing, conducted a hearing as to whether he made a prima facie showing, and gave a statement of reasons as to why it was denying the petition without issuing an OSC. (§ 1172.6, subds. (c), (d).)

In denying the petition, however, the court stated it was relying on this court's opinion that affirmed the denial of his first petition, that appellant was the actual killer, which, in turn, was based on the hearsay statements in the probation report that were summarized from the preliminary hearing transcript.

As explained above, appellant could file a second petition for resentencing because of the statutory amendments effective on January 1, 2022, since section 1172.6, subdivision (d)(3) "now says that the Evidence Code shall apply at such hearing. This may mean that, absent some exception, hearsay contained in probation, presentence reports, appellate opinions/orders, and other documents, are not now admissible" at an evidentiary hearing. (*People v. Owens, supra,* 78 Cal.App.5th at p. 1026.) "If such evidence may not be considered at an evidentiary hearing to determine a petitioner's

23.

ultimate eligibility for resentencing, we fail to see how such evidence could establish, as a matter of law, a petitioner's ineligibility for resentencing at the prima facie stage." (*People v. Flores*, *supra*, 76 Cal.App.5th at p. 988, fn. omitted.)

The superior court erroneously denied appellant's second petition by relying on this court's opinion that affirmed the denial of his first petition, that in turn relied on the hearsay factual summary from the probation report.

## IV. The Record of Conviction

The trial court's erroneous reliance on hearsay evidence to deny appellant's second petition is not prejudicial unless it is reasonably probable that, absent error, his or her petition would not have been summarily denied without an evidentiary hearing. (*Lewis, supra*, 11 Cal.5th at pp. 972–974; *People v. Watson, supra*, 46 Cal.2d at p. 836.)

A petitioner convicted of murder is ineligible for resentencing, and the petition may be denied without issuing an OSC, if the record of conviction conclusively establishes, with no factfinding, weighing of evidence, or credibility determinations, that he was the actual killer. (§§ 188, subd. (a)(3), 189, subd. (e); *Lewis, supra*, 11 Cal.5th at p. 971; *People v. Gentile* (2020) 10 Cal.5th 830, 842–843; *People v. Lopez* (2022) 78 Cal.App.5th 1, 14–15.) Even if convicted under the felony-murder rule, the petitioner is ineligible for resentencing if he was the actual killer. (§§ 188, subd. (a); 189, subd. (e)(1); 1172.6, subd. (a)(3).)

In determining whether a petitioner made a prima facie case for relief, the court may review the record of conviction that allows the court "to distinguish petitions with potential merit from those that are clearly meritless. This is consistent with the statute's overall purpose: to ensure that … culpability is commensurate with a person's actions, while also ensuring that clearly meritless petitions can be efficiently addressed as part of a single-step prima facie review process." (*Lewis, supra,* 11 Cal.5th at pp. 971–972 & fn. 6.)

24.

The People acknowledge the hearsay factual summary in the probation report is now inadmissible to determine if a petition made a prima facie showing for relief. We turn to other parts of the record of conviction to determine whether the trial court's error was prejudicial.

**A.      *The Preliminary Hearing Transcript***

The criminal complaint jointly charged appellant and his codefendants with murder with special circumstances, plus separate charges of rape and robbery. On June 13, 1980, after a joint preliminary hearing, appellant and his codefendants were held to answer. The information was then filed, that charged appellant and the codefendants with murder and robbery and did not reallege the special circumstances. Appellant pleaded to second degree murder and robbery, and there was no trial.

At the hearing on appellant's second section 1172.6 petition, Ms. Takao, appellant's counsel, stated she had a copy of the preliminary hearing transcript and reviewed it, and it contained hearsay statements about appellant's culpability in the murder. The district attorney stated he did not have a copy of the transcript.

Appellant's counsel did not introduce the transcript into evidence, and the superior court did not state that it relied on that transcript when it denied appellant's second petition.

The preliminary hearing transcript is part of the record of conviction, but it is not before this court. Moreover, "hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule." (§ 1172.6, subd. (d)(3).)

**B.      *Appellant's Admission to the Firearm Enhancement***

When appellant pleaded guilty to second degree murder and robbery in 1980, he also admitted he personally used a firearm, a handgun, in the commission of both offenses (§ 12022.5). At the hearing on appellant's second petition for resentencing, the

25.

superior court asked appellant's attorney whether it could rely on appellant's admission to the personal use enhancement to find he was the actual killer. Appellant's counsel disagreed, and the court did not rely on that enhancement when it stated reasons for denying the petition.

There are circumstances where a defendant's admission to a personal use enhancement may constitute evidence that he was the actual killer. In *People v. Jones* (2003) 30 Cal.4th 1084, the court held that a jury's finding that a defendant personally used a firearm, in and of itself, does not in itself prove a defendant is the actual killer because a gun could be used even if it is never fired: "If two robbers display guns to intimidate robbery victims and one shoots and kills a victim, both robbers could be found to have personally used a gun in the robbery and the felony murder, even though only one is the actual killer." (*Id*. at p. 1120.) However, when the record shows only one person displayed and used a gun, and "[a]ll evidence points to defendant, not the second robber, as the one with the gun," the true finding on a personal use enhancement demonstrates that the defendant was the actual killer. (*Ibid*.)

In *People v. Young* (2005) 34 Cal.4th 1149, the court reaffirmed that a finding of personal use, standing alone, does not demonstrate a defendant was the actual killer. (*Id.* at p. 1205.) However, where there was "no evidence that anyone else who may have been present at the … residence displayed in a menacing manner, or otherwise used, a gun," then "all evidence points to [the] defendant as the one who actually shot and killed [the victim]." (*Ibid.*)

In *People v. Garrison* (2021) 73 Cal.App.5th 735, the court relied on *Jones* and *Young*, and held that where the petitioner admitted he was the only person armed with a handgun during the commission of a robbery, and the uncontroverted evidence showed that gun was used to shoot the victim, the evidence demonstrated that he was the actual killer, and he was ineligible for relief under section 1172.6. (*Garrison*, at pp. 743, 747.)

26.

In this case, the information jointly charged appellant and his codefendants with murder and robbery, with attached enhancements for personal use of a firearm. The record of conviction shows that appellant pleaded guilty to murder and robbery and admitted the attached personal use enhancements for both counts. The probation report, again in hearsay statements, stated that codefendants Green, Byrd, and Taylor only pleaded guilty to robbery and not to murder, and did not mention the resolution of the firearm enhancements in their cases.

In *People v. Brownlee, supra*, F053324, one of the cases that we have judicially noticed, the record includes the transcript of the sentencing hearing for codefendant Green, held on December 18, 1980, that states he pleaded guilty only to robbery with the use of a firearm, and not to murder; he was sentenced to seven years in prison.

The record before this court, however, does not contain non-hearsay evidence of how the charges were resolved against the two remaining codefendants, Byrd and Taylor, and whether either of them pleaded to murder with the firearm enhancement, to determine whether appellant was the actual killer based on his plea to murder with the personal use enhancement. (*People v. Jones, supra*, 30 Cal.5th at p. 1120; *People v. Young*, *supra*, 34 Cal.4th at p. 1205.)

**C.    *The Court's Findings at Appellant's Sentencing Hearing***

The People argue the record of conviction shows appellant was ineligible for resentencing based upon the trial court's statements at the sentencing hearing in 1980, when it found multiple aggravating circumstances, and stated the commission of the robbery was complete and the murder "was a separate venture on the part of the [appellant] to shoot this victim…." The People assert the court's "analysis" of the aggravating and mitigating factors at the sentencing hearing "was informed by the presentence report by the probation officer, the arguments of the parties, *and (presumably) the plea transcript*." (Italics added.)

27.

There was no trial in this case. Judge Caeton conducted both the plea and sentencing hearings. The reporter's transcript for the plea hearing no longer exists. The minute order states the court found a factual basis for appellant's plea but does not state the grounds for that factual basis. The court's statements at the sentencing hearing in 1980 were not based on the evidence that had been introduced at the plea hearing or even the preliminary hearing. Instead, the sentencing transcript shows the court relied on the hearsay statements in the probation report when it found the aggravating circumstances and that appellant was the actual killer.

We reject the People's argument that the court's statements at the sentencing hearing could be considered to find appellant was ineligible for resentencing as a matter of law.

## V. Consideration of Appellant's Sworn Statements at the Parole Board Hearings

As explained above, this court advised the parties that it was considering taking judicial notice of appellant's prior cases in this court's records, including *In re Terrence Brownlee*, *supra*, F083164, a petition for writ of habeas corpus filed by appellant on August 10, 2021, where he claimed the Board of Parole Hearings violated his due process rights and issued arbitrary rulings when it denied parole to him in 2010 and 2021. In support of this petition, appellant filed certified copies of the transcripts of his hearings before the Board of Parole Hearings, held on August 19, 2010, and February 4, 2021. (Evid. Code, §§ 452, subd. (d)(1), 459, subd. (a).) On November 4, 2021, this court denied the petition.

We ordered the parties to submit supplemental briefing as to whether this court may take judicial notice of these particular records, and whether we may rely on appellant's sworn testimony that he was the actual killer, contained in the certified copies of the transcripts of the Board of Parole Hearings, to determine whether the superior court properly denied to resolve the instant appeal, based on the decisions in *People v.*

28.

*Myles* (2021) 69 Cal.App.5th 688 (*Myles*) and *People v. Anderson* (2022) 78 Cal.App.5th 81, 93 (*Anderson*).

The parties have agreed this court may take judicial notice of appellant's prior cases in our records, including the transcripts of the parole board hearings, and we may rely on appellant's sworn admissions at those hearings that he was the actual killer to resolve the instant appeal.

**A.** *Appellant's Sworn Statements at the Parole Board Hearings*

At the August 2010 hearing before the Board of Parole Hearings, appellant was present, represented by counsel, sworn as a witness, and questioned by members of the board.

"[Q.] Do you recall seeing the victim be shot?

"[A.] I just remember a gun, just the pop of a gun. And when I looked down at my hand, you know, it was like, you know, I didn't do this.

"[Q.] But you did it?

"[A.] Yeah, because the gun was in my hand. But it wasn't done by me intentionally. So I had got that across to the judge, this wasn't done by me intentionally. I mean, you know, I was there, and I took responsibility for it. Like I told my lawyer, yeah, I had the gun. I take responsibility for this, because had I been there and had the gun in my hand, it never would have happened…."

Appellant claimed he was drunk and on drugs. He was asked whether there were any blood tests. Appellant said that was "one of the discrepancies" because all the defendants tested negative.

Appellant was asked why he would take someone's life. Appellant testified: "That wasn't my intention, I would never take a life…."

"[Q.] But you did take a life.

"[A.] Yes."

In response to questions from his attorney, appellant admitted he went to the motel to commit a robbery, he knew one of the men had a gun, he didn't know that someone

had a second gun, someone handed the gun to him, he accepted it, and it was wrong to do that.

"[Q.] So you are the person who killed Ms. Brown, I take it?

"[A.] I had the gun. The gun went off in my hand.

"[Q.] *Are you the person who killed Mrs. Brown*?

"[A.] *Yeah, the gun was in my hand. Yes*." (Italics added.)

At the February 2021 hearing before the Board of Parole Hearings, appellant was present, represented by counsel, sworn as a witness, and answered questions. "The gun was in my hand. It went off from my hand. *So, therefore, I committed the murder*. I accept responsibility … for that…." (Italics added.)

Appellant stated he was "out of it" because he was drinking and using drugs. A member of the panel noted appellant tested negative for anything in his system. Appellant claimed the tests were wrong.

In response to further questioning, appellant said he knew they were going to do a robbery, someone handed him a gun, and he did not plan for it to happen. "The gun was in my hand. It went off from my hand. So, therefore, I committed the murder." "[W]hen the gun went off, it was in my hand. To [this] day … I don't know if I pulled the trigger or the guy behind me hit my arm, but the gun went off from my hand. That's why I said full responsibility for having the gun…."

"[Q.] …. [L]et me ask you this. Did you do that? Did you shoot her?

"[A.] Yes, the gun was in my hand. So, like I said, uh, the gun was in my hand. [¶] … and I remember going off from my hand, so yes…."

Appellant further stated: "I'm responsible for what happened to Shirley Brown. The gun was in my hand. I take full responsibility for that. Uh, I can't change that. That's something that I have to live with for the rest of my life … because I know a life was taken from this world by my hands, not, you know, by my hands. It happened by my hand."

30.

**B.**     *Admissibility of Parole Hearing Transcripts Under Section 1172.6*

A petitioner's statements in parole hearing transcripts have been held admissible to determine the merits of a section 1172.6 petition.  In *Myles, supra,* 69 Cal.App.5th 688, the defendant pleaded no contest to second degree murder, and later filed a petition for resentencing pursuant to former section 1170.95.  The superior court issued an OSC and held an evidentiary hearing.  The prosecution moved to introduce the defendant's statements from a parole risk assessment report and parole hearing transcript, where she admitted killing the victim and explained how she did it.  The trial court overruled defense objections and admitted the evidence, denied the petition, and found the defendant was the actual killer.  (*Myles*, at p. 694.)  On appeal, the defendant argued her statements at the parole hearing were inadmissible because they were protected by "use immunity" and did not constitute "new or additional evidence" that could be introduced at the evidentiary hearing.  (*Id.* at p. 692.)

*Myles* held the defendant's statements in the parole hearing transcripts constituted " 'new or additional evidence' " because, "[i]n light of the limited record often available in cases *resolved by plea*, the provisions allowing both parties to present evidence available for the first time postconviction enables them to meet their respective burdens of proof."  (*Myles, supra*, 69 Cal.App.5th at p. 699, italics added.)

*Myle*s further held the defendant's statements at the parole hearing were not protected by use immunity because "the Fifth Amendment protects individuals from government coercion.  Here, [the] defendant was not compelled to file a [former] section 1170.95 petition, nor to testify at her parole hearing, nor to participate in her risk assessment interview.  Indeed, as the trial court noted and [the] defendant acknowledges, parole cannot be conditioned on admission of guilt to a certain version of the crime. [Citations.]  [The] [d]efendant was also expressly advised at her parole hearing that she had the option to not discuss the commitment offense and that choice would not be held against her.  [The] [d]efendant opted instead to discuss it and testified under oath about

31.

her role in the crime.  Having chosen to be truthful in the assessment interview and testify truthfully at the parole hearing, it is not fundamentally unfair to admit that information during a resentencing proceeding voluntarily initiated by defendant bearing on some of the same issues." (*Myles, supra*, 69 Cal.App.5th at p. 706.)

In *Anderson, supra,* 78 Cal.App.5th 81, the defendant was convicted of two counts of first degree murder, robbery, and burglary.  He filed a petition for resentencing under former section 1170.95, and the court issued an OSC and held an evidentiary hearing.  At the hearing, the court granted the prosecutor's motion to admit the defendant's testimony at a parole board hearing and relied on that evidence to deny his petition.  (*Id*. at pp. 83–84.)  *Anderson* relied on *Myles* and rejected the defendant's claim that his testimony at the parole hearings was protected by use immunity, and his alternate argument that *Myles* was wrongly decided.  (*Anderson,* at pp. 89–92; see also *People v. Mitchell* (2022) 81 Cal.App.5th 575, 588 ["As other courts have done, we follow *Myles*'s well-reasoned analysis" and the defendant's statements at parole board hearing are admissible at a section 1172.6 evidentiary hearing]; *People v. Duran* (2022) 84 Cal.App.5th 920, 927, 930–932.)

## C.  *The Parties' Supplemental Briefing*

As explained above, the trial court committed error when it denied appellant's second petition by relying on this court's prior opinion.  In that opinion, this court affirmed the denial of his first petition by relying on the probation report's hearsay summary of the facts from the preliminary hearing transcript.

The question is whether the trial court's erroneous reliance on hearsay evidence was prejudicial in light of appellant's sworn statements at the parole board hearings.  In response to our briefing order on this subject, the People stated remand was not required for an evidentiary hearing because the prosecutor would simply introduce the transcripts from the parole hearings, as permitted by *Myles*, *Anderson*, and *Mitchell.*  In those transcripts, appellant admitted he killed the victim, and the trial court would be certain to

32.

deny appellant's petition based on those admissions. The People further argued that if appellant filed another appeal, counsel would likely file a *Wende* brief. In the interests of judicial economy, the People argued this court should rely on appellant's admissions in the transcripts of the parole board hearings to find the trial court's erroneous reliance on hearsay was not prejudicial, and he was ineligible as a matter of law because he was the actual killer.

In his brief, appellant's counsel stated that while this court may take judicial notice of our own records, appellant's sworn statements at the parole board hearings were not part of the "record of conviction." However, counsel acknowledged the holdings in *Myles*, *Anderson*, and *Mitchell*, that a petitioner's statements at such hearings may be considered in determining the merits of a section 1172.6 petition for resentencing.

Appellant's counsel conceded that while it "would be more appropriate to remand this matter to the trial court to issue an order to show cause and hold an evidentiary hearing pursuant to … section 1172.6, subdivisions (c) and (d), under the above recited existing case law *appellant submits that, notwithstanding the California Supreme Court's limitation of consideration to matters contained in the 'record of conviction,' it does not appear unlawful for this court to consider any sworn statements made before the Board of Parole Hearings*." (Italics added.)

D. *Conclusion*

Based on appellant's concession that we may rely on his admissions before the parole board, we find the trial court's erroneous reliance on this court's prior opinion, and the hearsay statements within that opinion, to deny his second petition was not prejudicial given appellant's sworn admissions at the parole board hearings that he was the actual killer of the victim, and he is ineligible for resentencing as a matter of law.

## DISPOSITION

The court's order of August 18, 2022, denying appellant's second petition is affirmed.